UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONZO TOLBERT,<br><br>    Plaintiff,<br><br>  v.<br><br>D. PEELER,<br><br>    Defendant. | CASE NO. 1:03-CV-5254-REC-SMS-P<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br><br>(Doc. 35) |

I. Defendant's Motion for Summary Judgment

 A. Procedural History

Plaintiff Alfonzo Tolbert ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's amended complaint, filed July 1, 2003, against defendant Peeler ("defendant") for excessive force and retaliation.[1] On December 14, 2005, defendant filed a motion for summary judgment. (Doc. 35.) After obtaining an extension of time, plaintiff filed an opposition on March 8, 2006, but failed to sign it.[2] (Doc. 39.) Pursuant to the court's order of May 5, 2006, plaintiff signed and re-filed his opposition on May 18, 2006. (Docs. 40, 41.)

///

---

[1] Plaintiff's due process claim and all other named defendants were dismissed from this action for failure to state a claim upon which relief may be granted. (Doc. 19.)

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on January 22, 2004. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 21.)

B.     <u>Legal Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id</u>. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id</u>. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id</u>. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id</u>. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

///

1 return a verdict for the nonmoving party. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436
2 (9th Cir. 1987).

3       In the endeavor to establish the existence of a factual dispute, the opposing party need not
4 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
5 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
6 trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
7 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
8 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
9 amendments).

10       In resolving the summary judgment motion, the court examines the pleadings, depositions,
11 answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c).
12 The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable
13 inferences that may be drawn from the facts placed before the Court must be drawn in favor of the
14 opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655
15 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing
16 party's obligation to produce a factual predicate from which the inference may be drawn. Richards
17 v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th
18 Cir. 1987).

19       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show
20 that there is some metaphysical doubt as to the material facts. Where the record taken as a whole
21 could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
22 trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

23 ///
24 ///
25 ///

C.   Undisputed Facts[3]

1.   Excessive Force Claim

1. At all times relevant to this action, plaintiff was a state prisoner housed at the California Correctional Institution (CCI) in Tehachapi, California.

2. At all times relevant to this action, defendant was a correctional officer at CCI.

3. On December 13, 2000, during an escort to an institutional classification committee (ICC) hearing, plaintiff brought to defendant's attention certain property which defendant had issued to him on November 15, 2000. Defendant informed plaintiff that his issue with the property could be addressed in an inmate appeal. Plaintiff began cursing and making threats, stating, "We can handle this like men, and you could step into my cell. I'll kick your ass." Plaintiff was later issued a CDC-115 Rules Violation Report for threatening staff.

4. Plaintiff was escorted to the ICC hearing. During the hearing, plaintiff became upset, started talking, and refused to be quiet when he was instructed to do so by the committee. Defendant instructed plaintiff to stand up and leave while lifting him up by his right arm to help him up to his feet.

5. Defendant started escorting plaintiff back to his unit. During the escort, plaintiff began pulling away from defendant's grasp. Plaintiff was ordered to stop resisting, but he refused and continued pulling away. While exiting the dining hall, plaintiff continued to resist. Defendant ordered plaintiff to face the wall outside of dining hall #4. Plaintiff complied and defendant counseled him regarding the expectations during an escort. Plaintiff indicated that he understood.

---

[3] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by defendant as undisputed. Local Rule 56-260(b). Therefore, defendant's statement of undisputed facts is accepted except where brought into dispute by plaintiff's verified amended complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). A verified opposition to a motion for summary judgment may also be considered as an opposing affidavit for purposes of the summary judgment rule if it is based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). However, because plaintiff's opposition was not verified, only plaintiff's declaration in support of his opposition is considered as an affidavit. Moran v. Selig, No. 04-55647, 2006 WL 1229122, at *7 (9th Cir. May 9, 2006).

4

6. Correctional Officer Eilers, who was en route to dining hall #4 to process inmates, saw defendant escort plaintiff out of the dining hall and have plaintiff face the wall. Officer Eilers took over the escort and returned plaintiff to his housing unit.

7. Officer Eilers witnessed defendant escort plaintiff out of the dining hall, but did not see plaintiff forced against the wall and did not see defendant use any force on plaintiff. Officer Eiler observed that plaintiff did not touch the wall.

8. During the escort back to the housing unit, plaintiff did not make any accusations to Officer Eilers that he had been assaulted by defendant. Officer Eilers did not see any injuries on plaintiff.

9. Medical Technical Assistant (MTA) Patton responded to the housing unit on December 13, 2000, at 10:40 a.m. to evaluate plaintiff. MTA Patton completed a CDC-7219 Medical Report of Injury or Unusual Occurrence form.

10. The CDC-7219 reflects that plaintiff stated, "When I came out of committee c/o Peeler slammed my head against the wall." The CDC-7219 also shows that MTA Patton conducted an unclothed body examination with boxers on. Plaintiff complained of a headache and requested an x-ray. MTA Patton did not see any signs or symptoms of injuries. If MTA Patton had seen any injuries, he would have documented them on the CDC-7219 form. Plaintiff was returned to custody and no further treatment was warranted.

    2.    <u>Retaliation Claim</u>

11. On or about December 13, 2000, plaintiff filed an inmate appeal in which he complained that on December 13, 2000, defendant assaulted him by slamming his head against the wall and placing his knee on plaintiff's back. Plaintiff's allegations were investigated and staff were interviewed in connection with the investigation. On February 11, 2001, plaintiff's inmate appeal was denied at the first formal level of review. On March 12, 2001, plaintiff forwarded the appeal for second level review. On March 22, 2001, plaintiff's appeal was denied at the second level of review. On April 25, 2001, plaintiff forwarded the appeal for third level review. On October 23, 2001, plaintiff's appeal was denied at the third level.

///

12. There is no record of a search of plaintiff's cell by defendant on February 19, 2001. Defendant did not search plaintiff's cell, escort him, or make any threats towards him on February 19, 2001.

13. On March 5, 2001, defendant and Officer Lynse conducted a search of plaintiff's cell. Three books were confiscated because they were not listed on plaintiff's property card. Additionally, pornographic photographs were removed from the cell wall. Officer Lynse completed a cell search contraband confiscation slip listing all confiscated items. The confiscated items included three books, brass paper clasps (potential use as a weapon), paper clips (potential stabbing weapons), one letter containing a green leafy substance suspected of being marijuana, excess state food, condiments, and trash.

14. On March 20, 2001, defendant concluded a review of the three books that were confiscated during the March 5, 2001, search of plaintiff's cell. The books consisted of two legal books and a dictionary. Plaintiff was unable to produce a property receipt for the books. The property was not listed on plaintiff's property card and therefore, it was confiscated.

15. The three books were confiscated because the books had been altered in a manner to conceal or remove the name and number of another inmate who is likely the legitimate owner of the books, and the books were not identified on plaintiff's property card.

16. A property card is a card which accounts for an inmate's personal property. All of the property an inmate comes into prison with is listed on a property card. If the inmate is transferred, the receiving institution accounts for his property on the property card. If the inmate purchases property or has property sent from home, it is also placed on the property card. There are two types of property cards: non-expendable property card and expendable property card. A non-expendable property card contains property such as a television, radio, and books. An expendable property card contains items such as clothing and shoes. In plaintiff's case, the books confiscated on March 5, 2001, should have been listed on the non-expendable property card. They were properly confiscated because they were not listed on the card.

17. It is common for housing unit staff to search inmates' cells when they have been vacated for

showers, exercise yard, or committee hearings. The Department Operations Manual (DOM), section 52050.18 requires that random cell searches be conducted on a regular basis. It is required that a minimum of three cells, rooms, or dorm areas and lockers be searched every day during the second and third watch by the assigned housing unit officers. In situations with "lock-up" inmates, the searches must be conducted when inmates vacate their cells for showers, exercise yard, or committee hearings because "lock-up" inmates do not leave their cells often and it is most efficient to conduct cell searches as soon as an inmate is escorted out of his cell. (Id.) Therefore, it is common for housing unit staff to search inmates' cells when they have been vacated for showers, exercise yard, or committee hearings.

18. Plaintiff was a "lock up" inmate. His cell was searched on March 5, 2001, during the period when he was let out for exercise yard.

19. On March 5, 2001, plaintiff filed an inmate grievance against defendant complaining that on March 5, 2001, defendant searched and trashed his cell. On April 6, 2001, the inmate grievance was denied at the second formal level of review. On May 24, 2001, plaintiff forwarded the grievance for third level review. On September 21, 2001, the grievance was denied at the third level of review.

D. Excessive Force Claim

In his amended complaint, plaintiff alleges that on December 13, 2000, while being escorted to ICC by defendant, plaintiff asked defendant about his property, which had been lost or destroyed by defendant. Plaintiff alleges that defendant became hostile and threatened plaintiff. Plaintiff alleges that while in ICC, he reported the destruction of his property and defendant's threats, but his complaints were ignored. Plaintiff alleges that after he left ICC, defendant twisted his arm, causing extreme pain to his shoulder and hands, and slammed his face into a wall, causing him to suffer bruises and pain. Plaintiff alleges that he was then thrown to the floor and kicked by defendant.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks

7

1  and citations omitted). The malicious and sadistic use of force to cause harm always violates
2  contemporary standards of decency, regardless of whether or not significant injury is evident. Id.
3  at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force
4  standard examines de minimis uses of force, not de minimis injuries)). However, not "every
5  malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth
6  Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional
7  recognition de minimis uses of physical force, provided that the use of force is not of a sort
8  'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations
9  omitted).

10  "[W]henever prison officials stand accused of using excessive physical force in violation of
11  the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied
12  in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."
13  Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper
14  to evaluate the need for application of force, the relationship between that need and the amount of
15  force used, the threat reasonably perceived by the responsible officials, and any efforts made to
16  temper the severity of a forceful response." Id. (internal quotation marks and citations omitted).
17  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end
18  it." Id.

19  Defendant argues that he is entitled to judgment as a matter of law on plaintiff's excessive
20  force claim against him. On December 13, 2000, after plaintiff raised a property issue to defendant
21  during an escort to an ICC hearing and defendant informed him that his issue with the property could
22  be addressed in an inmate appeal, plaintiff began cursing and making threats, stating, "We can
23  handle this like men, and you could step into my cell. I'll kick your ass." (Undisputed Fact 3.)
24  Plaintiff was subsequently issued a CDC-115 Rules Violation Report for threatening staff. (Id.)

25  During the hearing, plaintiff became upset, started talking, and refused to be quiet when he
26  was instructed to do so by the committee. (U.F. 4.) Defendant instructed plaintiff to stand up and
27  leave while lifting him up by his right arm to help him up to his feet. (Id.) Defendant started
28  escorting plaintiff back to his unit. (U.F. 5.) During the escort, plaintiff began pulling away from

defendant's grasp. (Id.) Plaintiff was ordered to stop resisting, but he refused and continued pulling away. (Id.) While exiting the dining hall, plaintiff continued to resist. (Id.) Defendant ordered plaintiff to face the wall outside of dining hall #4. (Id.) Plaintiff complied and defendant counseled him regarding the expectations during an escort. (Id.) Plaintiff indicated that he understood. (Id.)

Correctional Officer Eilers, who was en route to dining hall #4 to process inmates, saw defendant escort plaintiff out of the dining hall and have plaintiff face the wall. (U.F. 6.) Officer Eilers took over the escort and returned plaintiff to his housing unit. (Id.) Officer Eilers witnessed defendant escort plaintiff out of the dining hall, but did not see plaintiff forced against the wall and did not see defendant use any force on plaintiff. (Id.) Officer Eiler observed that plaintiff did not touch the wall. (Id.) During the escort back to the housing unit, plaintiff did not make any accusations to Officer Eilers that he had been assaulted by defendant. (U.F. 8.) Officer Eilers did not see any injuries on plaintiff. (Id.)

MTA Patton responded to the housing unit on December 13, 2000, at 10:40 a.m. to evaluate plaintiff. (U.F. 9.) MTA Patton completed a CDC-7219 Medical Report of Injury or Unusual Occurrence form. (Id.) The CDC-7219 reflects that plaintiff stated, "When I came out of committee c/o Peeler slammed my head against the wall." (U.F. 10.) The CDC-7219 also shows that MTA Patton conducted an unclothed body examination with boxers on. (Id.) Plaintiff complained of a headache and requested an x-ray. (Id.) MTA Patton did not see any signs or symptoms of injuries, and would have documented them on the CDC-7219 form if he had seen any. (Id.) Plaintiff was returned to custody and no further treatment was warranted. (Id.) Defendant denies twisting plaintiff's arm, forcing plaintiff's head into the wall, or assaulting plaintiff. (Peeler Dec., ¶¶6, 7.)

In opposition to defendant's motion, plaintiff contends that defendant slammed his head into a brick wall. (Tolbert Dec., ¶3.) In addition, plaintiff contends defendants twisted his arm, threw him to the floor, and repeatedly kicked him. (Amend. Comp., p. 2A.) Plaintiff contends that he sustained bruises and experienced pain in his face and body. (Id.)

Although defendant argues that there is no evidence from which a rational trier of fact could find for plaintiff, plaintiff has submitted sufficient evidence to bring defendant's contention that he did not use any force against plaintiff into dispute. The evidence of plaintiff, as the opposing party,

9

is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of plaintiff. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, 369 U.S. at 655 (per curiam)). Plaintiff's declaration and verified amended complaint create a triable issue of fact. To the extent that plaintiff's version of the events may lack credibility, it is for the trier of fact to weigh the evidence and make credibility determinations. Accordingly, because there are material issues of fact in dispute in this matter, defendant is not entitled to judgment as a matter of law on the excessive force claim against him.

      E.      Retaliation Claim

In his amended complaint, plaintiff alleges that on December 13, 2000, he filed a Citizen's Complaint against defendant Peeler. Plaintiff alleges that on December 26, 2000, because of the complaint he filed, plaintiff received a false Rules Violation Report. Plaintiff was subsequently found guilty and assessed a five-month Security Housing Unit term.

Plaintiff alleges that on January 10, 2001, defendant and Officer Rhineth served plaintiff and his cellmate their meal in a trash bag that contained trash, contaminating the food. Plaintiff alleges that on February 19, 2001, he was told by several other inmates that defendant had entered his cell, tossed his property around, and taken a number of personal items. Plaintiff alleges that the cell search was retaliatory.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on plaintiff to demonstrate

1  "that there were no legitimate correctional purposes motivating the actions he complains of." Id. at
2  808.
3  　　Defendant argues that he is entitled to judgment as a matter of law because the cell search
4  was not motivated by plaintiff's grievance of December 13, 2000, and served legitimate penological
5  interests, and plaintiff did not suffer any chilling effect.[4] There is no record of a cell search by
6  defendant on February 19, 2001. (U.F. 12.) However, on March 5, 2001, defendant and Officer
7  Lynse conducted a search of plaintiff's cell. (U.F. 13.)  Section 52050.18 of the DOM requires that
8  random cell searches be conducted on a regular basis, and that a minimum of three cells, rooms, or
9  dorm areas and lockers be searched every day during the second and third watch by the assigned
10 housing unit officers. (U.F. 17.)  In situations with "lock-up" inmates, the searches must be
11 conducted when inmates vacate their cells for showers, exercise yard, or committee hearings because
12 "lock-up" inmates do not leave their cells often and it is most efficient to conduct cell searches as
13 soon as an inmate is escorted out of his cell. (Id.)  It is therefore common for housing unit staff to
14 search inmates' cells when they have been vacated for showers, exercise yard, or committee
15 hearings. (Id.) Plaintiff was a "lock up" inmate, and his cell was searched on March 5, 2001, during
16 the period when he was let out for exercise yard. (U.F. 19.)
17 　　In the course of the cell search, three books, brass paper clasps, paper clips, one letter
18 containing a green leafy substance suspected of being marijuana, excess state food, condiments, and
19 trash were confiscated. (U.F. 13.) Additionally, pornographic photographs were removed from the
20 cell wall. (Id.)  The three books were confiscated because they had been altered in a manner to
21 conceal or remove the name and number of another inmate who is likely the legitimate owner of the
22 books, and the books were not identified on plaintiff's property card, which accounts for an inmate's
23 personal property. (U.F. 15, 16.) Officer Lynse completed a cell search contraband confiscation slip
24 listing all confiscated items. (U.F. 13.)
25 ///

---

[4] In his motion, defendant addresses only the alleged incident on February 19, 2001, and an incident on March 5, 2001. Left unaddressed are plaintiff's claims that he was issued a false Rules Violation Report and that his meal was served in a trash bag containing trash.

On March 20, 2001, defendant concluded a review of the three books that were confiscated during the March 5, 2001, search of plaintiff's cell. (U.F. 14.) The books consisted of two legal books and a dictionary, and were confiscated because plaintiff was unable to produce a property receipt for the books and the property was not listed on plaintiff's property card. (Id.)

On March 5, 2001, plaintiff filed an inmate grievance against defendant complaining that on March 5, 2001, defendant searched and trashed his cell. (U.F. 19.) On April 6, 2001, the inmate grievance was denied at the second formal level of review. (Id.) On May 24, 2001, plaintiff forwarded the grievance for third level review. (Id.) On September 21, 2001, the grievance was denied at the third level of review. (Id.)

Defendant contends that plaintiff's cell was not trashed during the March 5, 2001 cell search, and that he did not search plaintiff's cell in retaliation for the inmate grievance plaintiff filed. (Peeler Dec., ¶17.) Defendant contends that the cell search was a random cell search done in accordance with institutional policy and procedure, and for the purpose of maintaining the safety and security of the institution, as it is often the case that during random cell searches, contraband such as weapons or controlled substances are uncovered. (Id.) Defendant contends that it is his practice to do searches on a regular basis in compliance with institutional policy and procedure. (Id.)

Plaintiff does not dispute that his cell was not searched on February 19, 2001. To the extent that plaintiff set forth the wrong date in his amended complaint and it is the search on March 5, 2001, that is at issue, plaintiff fails to set forth evidence raising a triable issue of fact. Plaintiff bears the burden of proving "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808. Although plaintiff contends that defendant entered his cell on March 5, 2001, for the sole purpose of harassing him, plaintiff has offered no evidence that defendant searched his cell to harass him, only conjecture.[5] (Tolbert Dec., ¶4; Amend. Comp., p. 2B.) Further, plaintiff has not set forth evidence demonstrating that the cell search was not motivated by *any* legitimate correctional purpose. Finally, plaintiff neither alleges nor submits any

---

[5] Plaintiff's amended complaint and declaration must be based on plaintiff's personal knowledge, not just mere belief, and must set forth facts admissible in evidence to which plaintiff is competent to testify. Johnson, 134 at 1399-1400; Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985) (citation omitted).

evidence that his First Amendment rights were chilled by the allegedly retaliatory cell search. See Robinson, 408 F.3d at 568-69 (with respect to the chilling element, the proper inquiry is whether the act "would chill or silence a person of ordinary firmness from future First Amendment activities.") (internal quotation marks and citations omitted).

Plaintiff has not met his burden of demonstrating the existence of material factual disputes. Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claim that defendant searched and trashed his cell in retaliation for the grievance he filed on December 13, 2000.

     F.    Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendant's motion for summary judgment, filed December 14, 2005, be GRANTED IN PART AND DENIED IN PART as follows:

    1.    Defendant's motion for summary adjudication on plaintiff's excessive force claim against him be DENIED; and

    2.    Defendant's motion for summary adjudication on plaintiff's retaliation claim against him based on the cell searches on February 19, 2001, and March 5, 2001, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 25, 2006**                  /s/ Sandra M. Snyder
icido3                                        UNITED STATES MAGISTRATE JUDGE